George V. Granade (State Bar No. 316050)
*ggranade@reesellp.com*
**REESE LLP**
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070

Michael R. Reese (State Bar No. 206773)
*mreese@reesellp.com*
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500

Spencer Sheehan (*pro hac vice* forthcoming)
*spencer@spencersheehan.com*
**SHEEHAN & ASSOCIATES, P.C.**
60 Cuttermill Road, Suite 412
Great Neck, New York 11021
Telephone: (516) 268-7080

*Counsel for Plaintiff Zulaika Mayfield
and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ZULAIKA MAYFIELD, *individually and on behalf of all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> REYNOLDS CONSUMER PRODUCTS LLC, <br><br> Defendant. | Case No. 3:23-cv-04587 <br><br> **CLASS ACTION COMPLAINT** <br><br> <u>**DEMAND FOR JURY TRIAL**</u> |

Plaintiff Zulaika Mayfield ("Plaintiff"), on behalf of herself and all others similarly situated (the "Class," as defined below), brings this Class Action Complaint against Defendant Reynolds Consumer Products LLC ("Defendant") and alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge, as follows:

## FACTUAL ALLEGATIONS

1. Defendant manufactures, labels, markets, and sells aluminum foil under the "Reynolds Wrap" brand which it labels with the words "FOIL MADE IN U.S.A. ***" (the "Product" or "Products"). An exemplar of the Product labeling is below:





2. American consumers value buying products which are made in America.

3. The Federal Trade Commission ("FTC") defines "Made in the United States," and its synonyms, such as "Made in U.S.A.," to mean any unqualified representation, express or implied, that a product, and by extension, the raw materials used in its manufacture, are of U.S. origin. 16 C.F.R. §§ 323.1(a), 323.2.

4. Companies that use unqualified claims that products are "Made in U.S.A." can mislead consumers when raw materials used in those products are sourced and/or transformed outside of the United States.

5.      The raw material for the aluminum in aluminum foil is bauxite, the only commercial ore of aluminum.

6.      In the process of making aluminum foil, bauxite is processed and refined into alumina, and alumina is then turned through a smelting process into aluminum in the form of aluminum ingots. The aluminum ingots are then further processed to make aluminum foil. *See Aluminium*, GEOSCIENCE AUSTRALIA, AUSTRALIAN GOVERNMENT (2021), https://www.ga.gov.au/education/classroom-resources/minerals-energy/australian-mineral-facts/aluminium [https://perma.cc/HR5J-66FP].

7.      The largest suppliers of bauxite for aluminum include Australia, Guinea, India, Brazil, Jamaica, and Vietnam.

8.      Until World War II, the U.S. and France were the world's major suppliers of bauxite, as well as the world's major producers of aluminum.

9.      Since 1981, none of the bauxite mined in the U.S. was used for aluminum.

10.     In 2013, the U.S. mined 1.3 percent of the bauxite it used, less than 0.1 percent of world production.

11.     U.S.-mined bauxite is used for abrasives, high-temperature refractory materials, and as a high-strength proppant for hydraulic fracturing of oil and gas wells.

12.     Due to Defendant's representation "FOIL MADE IN U.S.A. * * *," consumers will expect that all raw materials used in the foil Product are sourced from within the United States.

13.     The three stars reinforce the "Made in U.S.A." claim because stars are uniquely associated with the United States, seen through its flag.

14.     Without bauxite sourced from outside the United States, it would be impossible to produce the foil Product.

15.     The FTC considers it a deceptive practice to label a product as "Made in the United States" unless (1) the final assembly or processing of the product occurs in the United States, (2) all significant processing that goes into the product occurs in the United States, and (3) all or virtually all ingredients or components of the product are made and sourced in the United States. 16 C.F.R. § 323.2.

16. Assuming that all the processing of the bauxite into foil occurs in the United States, none or virtually none of the raw materials and components used in the Product are sourced in this country.

17. To the extent that bauxite is substantially transformed in the United States, Defendant's claim is not qualified to avoid consumer deception about the presence or amount of foreign bauxite used in the Product.

18. Defendant attempts to qualify the claim by purporting to limit its applicability to the "[F]oil," that the "*Foil* [is] Made in U.S.A."

19. This is insufficient to qualify the "Made in U.S.A." claim because consumers are not familiar with the sources of bauxite.

20. Reasonable consumers do not understand Defendant's claim to refer only to the transformation of bauxite into aluminum foil.

21. Assuming Defendant processes and transforms bauxite into aluminum foil in the United States, using American workers, the claim does not state this.

22. Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

23. Consumers frequently rely on representations, imagery, colors, and information on the labeling of products such as aluminum foil—especially the front labeling—in making purchase decisions.

24. All reasonable consumers, including Plaintiff and the Class members, read and relied on Defendant's "Made in U.S.A." representations when purchasing the Products, as they were on the front labeling of the Product.

25. Defendant's "Made in U.S.A." representations were material to Plaintiff's and the Class members' decisions to purchase the Products.

26. Plaintiff and the Class members paid a price premium for Defendant's aluminum foil Products based on the "Made in U.S.A." representations.

27. The value of the Product that Plaintiff purchased was materially less than its value

as represented by Defendant by means of the "Made in U.S.A." representations.

28. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

29. Had Plaintiff and the Class members known the truth, they would not have bought the Product or would have paid less for it.

30. The Product is sold for a price premium compared to other similar products, for no less than $4.99 per 75 square feet, excluding tax or any sales, a higher price than it would otherwise be sold for, absent the misleading representations and omissions that the Product is "Made in U.S.A."

## PARTIES

**Plaintiff Zulaika Mayfield**

31. Plaintiff Zulaika Mayfield is a citizen of San Francisco, San Francisco County, California.

32. Plaintiff purchased the Product at Walgreens in and around San Francisco, California, for personal, family, or household purposes between July 2020 and June 2023, among other times.

33. Plaintiff believed the Product was "Made in U.S.A.," understood to mean not only were the raw materials for the Product converted and transformed in the U.S.A., but the raw materials were sourced within this country.

34. Plaintiff bought the Product because she expected it was "Made in U.S.A.," understood to mean not only were the raw materials for the Product converted and transformed in the U.S.A., but the raw materials were sourced within this country because that is what the representations said and implied.

35. Plaintiff relied on the words, layout, packaging, and images on the Product label in deciding to purchase the Product, including the "Foil Made in U.S.A. * * *" representation.

36. Plaintiff is one of the many Americans who seeks to buy American and understands "Made in U.S.A." without qualifications to mean all or virtually all of a product, including its raw materials, were made in, and sourced from, the United States.

37. Plaintiff did not expect a product, especially from the Reynolds brand, would promise it was "Made in U.S.A." even though all or virtually all of the raw materials used were from outside of the United States.

38. Plaintiff trusted the Reynolds Wrap brand, because it is the equivalent of Kleenex (facial tissues) and Vaseline (petroleum jelly) in terms of its identity and position in its product category.

39. Plaintiff was disappointed because she believed the Product was made in the U.S.A., understood to mean not only were the raw materials for the Product converted and transformed in the U.S.A., but the raw materials were sourced within this country. In fact, however, all or virtually all of the bauxite used in the Product was obtained from sources outside of the United States.

40. As a result of the false and misleading representations, the Product is sold for a price premium, approximately no less than $4.99 per 75 square feet, excluding tax or any sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions that the Product is "Foil Made in U.S.A. * * *."

41. Plaintiff bought the Product at or exceeding the above-referenced price.

42. Plaintiff would not have purchased the Product if she knew the "Made in U.S.A." representations and omissions were false and misleading, or she would have paid less for it.

43. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, features, and/or components.

44. The Product was worth less than what Plaintiff paid, and she would not have paid as much absent Defendant's false and misleading statements and omissions.

45. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that the Product's "Foil Made in U.S.A. * * *" representations are consistent with its composition and sourcing and are therefore truthful and non-misleading.

46. Plaintiff is unable to rely on the ongoing labeling and representations that the Product is "Foil Made in U.S.A. * * *" because she is unsure whether those representations are

1  truthful.

2  **Defendant Reynolds Consumer Products LLC**

3  47.    Defendant Reynolds Consumer Products LLC is a Delaware limited liability company with its principal place of business in Lake Forest, Illinois, Lake County.

5  48.    Defendant is one of the oldest producers of aluminum products in the world.

6  49.    Defendant was instrumental in helping the United States achieve victory in the Second World War, through its commitment to converting bauxite into military equipment, used to defeat the Axis powers.

9  50.    For these, and other reasons, Defendant's packaging truthfully states that "Reynolds Wrap [is] TRUSTED SINCE 1947."

11  51.    Defendant's aluminum foil is a staple of Americana, with a variety of uses beyond wrapping up food.

13  52.    The Product is available to consumers in this District from third parties which include grocery stores, warehouse club stores, drug stores, convenience stores, big box stores, and online retailers.

**JURISDICTION AND VENUE**

17  53.    Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

19  54.    The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

21  55.    Plaintiff is a citizen of California.

22  56.    Defendant is a Delaware limited liability company with its principal place of business in Illinois.

24  57.    Upon information and belief, at least one member of Defendant is not a citizen of the same state as Plaintiff or the Class of persons Plaintiff seeks to represent.

26  58.    The members of the Class Plaintiff seeks to represent are more than 100, because the Product has been sold for several years with the labeling shown here in numerous grocery stores, dollar stores, warehouse club stores, drug stores, convenience stores, big box stores, and

online retailers across the State.

59. Venue is proper in this District because a substantial part of the events or omissions giving rise to the claims occurred in San Francisco County, including Plaintiff's purchase of the Product and awareness and experiences of and with the issues described here.

60. This Court has personal jurisdiction over Defendant because it transacts business within California and sells aluminum foil labeled "Foil Made in U.S.A. * * *" to consumers within California.

**Divisional Assignment**

61. Pursuant to Civil Local Rule 3-2(c) and (d), this action should be assigned to the San Francisco Division or the Oakland Division because a substantial part of the events or omissions giving rise to the claims occurred in San Francisco County, including Plaintiff's purchase of the Product and awareness and experiences of and with the issues described here.

**CLASS ALLEGATIONS**

62. Plaintiff seeks certification under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) of the following class:

> **The Class.** All persons in California who purchased the Product from the beginning of the applicable liability period to the present.

63. Excluded from the Class are (a) Defendant, Defendant's board members, executive-level officers, and attorneys, and immediate family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and Court staff; and (d) any person that timely and properly excludes himself or herself from the Class.

64. Plaintiff reserves the right to amend the definition of the Class if discovery or further investigation or analysis reveal the Class should be expanded, narrowed, or otherwise revised.

65. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as individual Class members would use to prove those elements in individual actions alleging the same claims.

CLASS ACTION COMPLAINT
*Mayfield v. Reynolds Consumer Products LLC*, No. 3:23-cv-04587
7

66. **Numerosity.** The size of the Class is so large that joinder of all Class members is impracticable. Due to the nature of Defendant's business, Plaintiff believes there are at least thousands, if not hundreds of thousands, of Class members geographically dispersed throughout California.

67. **Commonality and Predominance.** There are questions of law and fact common to the Class. These questions predominate over any questions affecting only individual Class members.

68. All Class members were exposed to Defendant's deceptive and misleading advertising and marketing claims that the Products were "Made in U.S.A." because those claims were on the front of the packaging of every Product.

69. Furthermore, common legal and factual questions include but are not limited to:

   i. whether Defendant engaged in the course of conduct alleged herein;

   ii. whether Defendant labeled the Product as "Made in U.S.A.";

   iii. whether all or virtually all of the bauxite used in the Products is sourced from outside of the United States;

   iv. whether Defendant's representation that the Products were "Made in U.S.A." is likely to deceive a reasonable consumer;

   v. whether Defendant's representation that the Products were "Made in U.S.A." is material to a reasonable consumer;

   vi. whether Defendant's representations and/or omissions violate the consumer protection statutes invoked below;

   vii. whether Plaintiff and the Class members have suffered injury in fact and loss of money or property as a result of Defendant's acts, omissions, or misrepresentations of material facts;

   viii. whether Defendant was unjustly enriched at the expense of Plaintiff and the Class members in connection with their purchases of the Products;

   ix. whether Plaintiff and the Class members are entitled to actual damages or other monetary relief including restitution or disgorgement; and

   x. whether Plaintiff and the Class members are entitled to injunctive or equitable relief and, if so, the nature of such relief.

70. Defendant engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually and on behalf of the Class members. Similar or identical

statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. Moreover, the common questions will yield common answers.

71. **Typicality.** Plaintiff's claims are typical of the claims of the Class members because Defendant injured all Class members through the uniform misconduct described herein; all Class members were subject to Defendant's false, misleading, and unfair advertising and marketing practices and representations, including the false and misleading claims that the Products are "Made in U.S.A."; and Plaintiff seeks the same relief as the Class members.

72. Furthermore, there are no defenses available to Defendant that are unique to Plaintiff.

73. **Adequacy of Representation.** Plaintiff is a fair and adequate representative of the Class because Plaintiff's interests do not conflict with the Class members' interests. Plaintiff will prosecute this action vigorously and is highly motivated to seek redress against Defendant. Furthermore, Plaintiff has selected competent counsel that are experienced in class action and other complex litigation. Plaintiff and her counsel are committed to prosecuting this action vigorously on behalf of the Class and have the resources to do so.

74. **Injunctive or Declaratory Relief.** The requirements for maintaining a class action pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

75. Plaintiff seeks class-wide injunctive relief because the practices at issue continue.

76. **Superiority.** The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for reasons including but not limited to the following:

   i. The damages individual Class members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct.

   ii. Further, it would be virtually impossible for the Class members individually to redress effectively the wrongs done to them. Even if Class members themselves could afford such individual litigation, the court system could

not. Individualized litigation would unnecessarily increase the delay and expense to all parties and to the court system and presents a potential for inconsistent or contradictory rulings and judgments. By contrast, the class action device presents far fewer management difficulties, allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

77. **Notice.** Plaintiff and her counsel anticipate that notice to the proposed Class will be effectuated through recognized, Court-approved notice dissemination methods, which may include United States mail, electronic mail, Internet postings, and/or published notice.

## CLAIMS FOR RELIEF

## FIRST CLAIM

**Violation of California's Unfair Competition Law**

CAL. BUS. & PROF. CODE § 17200 *et seq.*

**By Plaintiff against Defendant on Behalf of the Class**

78. Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

79. Plaintiff brings this claim against Defendant on behalf of the Class for violation of California's Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200 *et seq.* ("UCL").

80. The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." CAL. BUS. & PROF. CODE § 17200.

81. Defendant's conduct is "unlawful" because it violates California's False Advertising Law, CAL. BUS. & PROF. CODE § 17500 *et seq.* ("FAL"), and California's Consumers Legal Remedies Act, CAL. CIV. CODE § 1750 *et seq.* ("CLRA"), as set out below.

82. Defendant committed "unfair" business acts or practices by, among other things:

  i. engaging in conduct for which the utility of the conduct, if any, is outweighed by the gravity of the consequences to Plaintiff and the Class members;

  ii. engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the Class members; and

  iii. engaging in conduct that undermines or violates the spirit or intent of the consumer protection laws alleged in this pleading.

83. Defendant committed unlawful, unfair, and fraudulent business acts or practices by, among other things, engaging in conduct Defendant knew or should have known was likely to and did deceive reasonable consumers, including Plaintiff and the Class members.

84. Defendant's conduct was and continues to be deceptive because Defendant made materially false representations and omissions that cause consumers to believe the Product was "Made in U.S.A.," understood to mean not only were the raw materials for the Product converted and transformed in the U.S.A., but the raw materials (including bauxite) were sourced within this country.

85. Defendant made express and implied representations that the Product was made in the U.S.A., understood to mean not only were the raw materials for the Product converted and transformed in the U.S.A., but the raw materials (including bauxite) were sourced within this country.

86. As detailed above, in fact, the Products are not "Made in U.S.A." because all or virtually all of the bauxite used to make the Products is obtained outside of the United States.

87. Defendant knew or should have known, through the exercise of reasonable care, that the "Made in U.S.A." representations and omissions were false and misleading and likely to deceive reasonable consumers and cause them to purchase the Products.

88. Plaintiff and the Class members believed Defendant's representations that the aluminum foil Products were "Made in U.S.A." Plaintiff and the Class members would not have purchased the Products, but for Defendant's misleading statements about the Products being "Made in U.S.A."

89. Plaintiff and the Class members were injured in fact and lost money as a result of Defendant's conduct of deceptively describing the Products as "Made in U.S.A." Plaintiff and the Class members paid for Products that were "Made in U.S.A." but did not receive Products that were "Made in U.S.A." Instead, Plaintiff and the Class members received Products which were made from bauxite which was obtained outside of the United States.

90. Defendant profited from selling the falsely and deceptively advertised Products to unwary consumers, including Plaintiff and the Class members.

91. In accordance with California Business and Professions Code section 17203, Plaintiff, on behalf of herself and the Class members, seeks declaratory relief, injunctive relief, restitution for monies wrongfully obtained, disgorgement of ill-gotten revenues and/or profits, reasonable attorneys' fees and costs, and such other and further relief as the Court may deem just and proper.

## SECOND CLAIM

### Violation of California's False Advertising Law

### CAL. BUS. & PROF. CODE § 17500 *et seq.*

### By Plaintiff against Defendant on Behalf of the Class

92. Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

93. Plaintiff brings this claim against Defendant on behalf of the Class for violation of the FAL.

94. The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." CAL. BUS. & PROF. CODE § 17500.

95. It is also unlawful under the FAL to disseminate any statement concerning property or services that is "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id.*

96. Defendant's business practices as alleged herein constitute deceptive, false, and misleading advertising pursuant to the FAL because Defendant has advertised the Products in a manner that is untrue and misleading, which Defendant knew or reasonably should have known was false and misleading, and it omitted material information from its advertising.

97. As detailed above, Defendant committed acts of false and misleading advertising, as defined by the FAL, by using the "Made in U.S.A." representations and omissions to promote the Products to Plaintiff and the Class members as being made in the U.S.A., understood to mean

not only were the raw materials for the Product converted and transformed in the U.S.A., but the raw materials (including bauxite) were sourced within this country. In fact, the Products are not "Made in U.S.A." because all or virtually all of the bauxite used to make the Products is obtained outside of the United States.

98. Defendant knew or should have known, through the exercise of reasonable care, that the "Made in U.S.A." representations and omissions were false and misleading and likely to deceive reasonable consumers and cause them to purchase the Products.

99. Plaintiff and the Class members believed Defendant's representations that the aluminum foil Products were "Made in U.S.A." Plaintiff and the Class members would not have purchased the Products, but for Defendant's misleading statements about the Products being "Made in U.S.A."

100. Plaintiff and the Class members were injured in fact and lost money as a result of Defendant's conduct of deceptively describing the Products as "Made in U.S.A." Plaintiff and the Class members paid for Products that were "Made in U.S.A." but did not receive Products that were "Made in U.S.A." Instead, Plaintiff and the Class members received Products which were made from bauxite which was obtained outside of the United States.

101. Defendant profited from selling the falsely and deceptively advertised Products to unwary consumers, including Plaintiff and the Class members.

102. As a result, Plaintiff, on behalf of herself and the Class, seeks declaratory relief, injunctive relief, equitable relief, restitution, an order to disgorge the funds by which Defendant was unjustly enriched, reasonable attorneys' fees and costs, and such other and further relief as the Court may deem just and proper.

### THIRD CLAIM

**Violation of California's Consumers Legal Remedies Act**

**CAL. CIV. CODE § 1750** *et seq.*

**By Plaintiff against Defendant on Behalf of the Class**

103. Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

104. Plaintiff brings this claim against Defendant on behalf of the Class for violation of the CLRA.

105. The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

106. Defendant's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Products for personal, family, or household purposes by Plaintiff and the Class members and violated the following sections of California Civil Code section 1770:

    i. section 1770(a)(4): using deceptive representations or designations of geographic origin in connection with goods;

    ii. section 1770(a)(5): representing that goods have characteristics, uses, or benefits that they do not have;

    iii. section 1770(a)(9): advertising goods with intent not to sell them as advertised; and

    iv. section 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

107. As detailed above, Defendant used the "Made in U.S.A." representations and omissions to promote the Products to Plaintiff and the Class members as being made in the U.S.A., understood to mean not only were the raw materials for the Product converted and transformed in the U.S.A., but the raw materials (including bauxite) were sourced within this country. In fact, the Products are not "Made in U.S.A." because all or virtually all of the bauxite used to make the Products is obtained outside of the United States.

108. Defendant knew or should have known, through the exercise of reasonable care, that the "Made in U.S.A." representations and omissions were false and misleading and likely to deceive reasonable consumers and cause them to purchase the Products.

109. Plaintiff and the Class members believed Defendant's representations that the aluminum foil Products were "Made in U.S.A." Plaintiff and the Class members would not have purchased the Products, but for Defendant's misleading statements about the Products being "Made in U.S.A."

110. Plaintiff and the Class members were injured in fact and lost money as a result of Defendant's conduct of deceptively describing the Products as "Made in U.S.A." Plaintiff and the Class members paid for Products that were "Made in U.S.A." but did not receive Products that were "Made in U.S.A." Instead, Plaintiff and the Class members received Products which were made from bauxite which was obtained outside of the United States.

111. Defendant profited from selling the falsely and deceptively advertised Products to unwary consumers, including Plaintiff and the Class members.

112. In compliance with the provisions of California Civil Code section 1782, Plaintiff sent written notice by certified mail, return receipt requested, to Defendant on July 14, 2023, of the particular violations of section 1770 set forth herein. The letter expressly stated it was sent on behalf of Plaintiff Mayfield and "all others similarly situated in California." The notice letter informed Defendant of Plaintiff's intention to seek damages and other monetary relief under the CLRA on behalf of herself and all others similarly situated should Defendant fail to correct or otherwise rectify its deceptive practices and provide a remedy for herself and similarly situated California consumers. Defendant did not correct its violations of the CLRA within 30 days.

113. For the foregoing reasons, Plaintiff seeks declaratory relief, injunctive relief, monetary damages, restitution and/or disgorgement, reasonable attorneys' fees and costs, and such other and further relief as the Court may deem just and proper.

## FOURTH CLAIM

### Unjust Enrichment

### By Plaintiff against Defendant on Behalf of the Class

114. Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

115. Plaintiff brings this claim against Defendant on behalf of the Class for unjust enrichment.

116. As a result of Defendant's deceptive, fraudulent, and misleading labeling, advertising, marketing, and sales of the Products, Defendant was enriched at the expense of Plaintiff and the Class members, through the payment of the purchase price for the Products or

through the payment of a price premium for the Products.

117. Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits it received from Plaintiff and the Class members because the Products purchased by Plaintiff and the Class members were not what Defendant purported them to be. Thus, it would be unjust or inequitable for Defendant to retain the benefit without restitution to Plaintiff and the Class members for the monies paid to Defendant for such Products.

118. Plaintiff and the Class members seek to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

119. As a direct result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and the Class members seek declaratory relief, restitution, disgorgement, imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant for its inequitable and unlawful conduct, and such other and further relief as the Court may deem just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the members of the Class, respectfully requests the Court to enter an Order:

A. certifying the proposed Class under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), as set forth above;

B. declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

C. declaring that Defendant has committed the violations of law alleged herein;

D. providing for any and all injunctive relief the Court deems appropriate;

E. awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

F. providing for any and all equitable monetary relief the Court deems appropriate;

G. awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

      H.     awarding Plaintiff her reasonable costs and expenses of suit, including attorneys' fees;

      I.     awarding pre- and post-judgment interest to the extent the law allows; and

      J.     providing such further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all claims so triable.

Date: September 7, 2023

Respectfully submitted,

**REESE LLP**

By: /s/ George V. Granade
George V. Granade (State Bar No. 316050)
ggranade@reesellp.com
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070

**REESE LLP**
Michael R. Reese (State Bar No. 206773)
mreese@reesellp.com
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500

**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan (*pro hac vice* forthcoming)
spencer@spencersheehan.com
60 Cuttermill Road, Suite 412
Great Neck, New York 11021
Telephone: (516) 268-7080

*Counsel for Plaintiff Zulaika Mayfield and the Proposed Class*